The first case on the call this morning, Agenda No. 1 is DACA No. 123318, People v. Darren Johnson. If you're ready, you may proceed, Counsel. Thank you, Your Honor, and may it please the Court, I'm Assistant Attorney General Eric Levin on behalf of the people of the State of Illinois. More than 50 years ago in People v. Weaver, this Court interpreted the burglary statute's unauthorized entry prong as incorporating what's come to be known as the limited authority doctrine. Under that doctrine, as articulated in Weaver, a person has no authority to enter a building, even if that building is otherwise open to the public at the time, if the person enters with the intent to commit a theft. And that doctrine rests on the common sense notion that even when a business opens its doors to the public, it is not invited in those who would enter with an intent to steal. Weaver controls this case, and I think it's important to note at the outset that the defendant has not asked the Court to overrule Weaver. And even if he had, he would face an uphill battle in doing so, as Weaver, being a case of statutory construction, would be entitled to a heightened degree of stare decisis considerations. So the question here, then, is whether or not the Court should recognize an exception to the limited authority doctrine simply for retail stores, as opposed to any other type of open business. And the answer to that question is no. There's no support in this Court's precedent for such an exception, particularly in People v. Bradford, which the Court decided a few years ago, nor did the General Assembly indicate any legislative intent to create such an exception by enacting a retail theft statute several years after Weaver. And I'd like to briefly go through both of those points, but I'm happy to take questions at any time on any issue. First, Bradford. Bradford, it is true, involved a defendant who had shoplifted merchandise from an open retail store. But the question there was limited to whether or not the Court should extend Weaver's limited authority doctrine from the unauthorized entry type of burglary that was at issue here and in Weaver to the distinct unauthorized remaining charge that was at issue there. And the Court declined to do so for a number of reasons, but each of those reasons related uniquely to the type of burglary charge at issue there, in particular the unauthorized remaining charge, and really have no those factors have no bearing on the type of unauthorized entry charge at issue here. So, for instance, the Court in Bradford noted that it would simply be unworkable to extend the limited authority doctrine to the unauthorized remaining burglary because there's just really no way to know whether a person who entered the store with intent, with no intent to commit a theft, and so with authority, there's no way to really know whether or when that person remained in the store. Isn't that the question in this particular situation, too, now, today? No, so that question doesn't arise, and that workability problem is not presented in an unauthorized entry charge, because here the only question is whether or not the defendant entered the store with the prohibited intent. And entry is clearly a discrete event in time, and courts are well equipped to make determinations about whether or not the prohibited intent existed at that time or not. It will often depend on circumstantial evidence. What's the difference once they've decided on that intent once they got in the store? Well, Weaver makes clear that an intent formed after entry will not satisfy the statute. So a person who enters without the prohibited intent, so innocently enters the store, but then once inside commits a spur-of-the-moment theft, would not be guilty of unauthorized entry burglary. And under Bradford, would not be guilty of unauthorized remaining burglary. But the question here is whether somebody who enters with that prohibited intent is guilty of unauthorized entry burglary. If someone here, if these individuals went into the store with the intent, but then decided not to do it, are they still guilty of burglary? They would be. Now, it might be difficult. But we might never see that case in court because we might never have discovered that the person had committed burglary. But that, the idea that somebody commits burglary as soon as they enter the building with the prohibited intent is true across all forms of unauthorized entry burglary, even in what you might consider to be the more traditional types of burglary that don't depend on the limited authority doctrine. So imagine somebody who enters a building after hours with the intent to steal. That person has committed burglary as soon as they've entered with that intent. Isn't that unauthorized entry? Yes. That would be unauthorized entry, which would not depend on the limited authority doctrine. But what Weaver said was that even if the building is open to the public, if the person enters with the intent to steal, they have no authority to enter because the building has not opened its doors to that person to enter. You know, when the retail store opens its doors and invites the public to enter, it's doing so, it's giving them the license to enter for purposes consistent with the reason the building is open in the first place. And that's precisely what Weaver said in adopting the limited authority doctrine. So you're saying the lack of authority comes from the mind of the defendant rather than the actions of the proprietor? Yes. Well, I'd say it's a little bit of both. I mean, implicit in the invitation to enter is the notion that that invitation is only being extended to those who would enter for legitimate purposes. So it does depend on the notion that the proprietor has not extended an invitation to somebody who would enter with the intent to commit theft. On the other hand, or relatedly, the fact that a person enters the store with that prohibited intent demonstrates that they've entered without authority under the limited authority doctrine. And I think it's important to note here that, again, the defendant has not asked the court to overrule Weaver. His brief was very clear on that point. And even if he had, Weaver was a case of statutory construction. If the General Assembly at any time in the 50 years since Weaver had thought that this court interpreted the burglary statute incorrectly in Weaver, it's been free to amend the statute. And it has not done so. And as this Court's case has recognized, that type of acquiescence, especially the lengthy acquiescence that we've seen here, is a strong evidence that the General Assembly itself has accepted Weaver's interpretation of the burglary statute as correct. Counsel, let me ask a question. Did I understand you to say that you can be convicted of burglary for only having the intent to commit a crime inside without committing an act? You go in and you change your mind? You're guilty of burglary? Yes. That is traditionally the offense of burglary is traditionally completed upon the unauthorized entry, whether or not the person later commits. So burglary is always So you can be convicted of a crime without committing an act. I thought you needed a mens rea and an actus reus. Oh, certainly. An intent and an act. Certainly. So where's the act if you only have the intent to commit the crime, but you don't act upon the intent? Oh, definitely. Well, you certainly need an act, and the act is the entry into the building. The mens rea is Even if you don't steal anything. True. And because the whether or not you steal something, that's the separate offense of either general theft or retail theft. So burglary is always, by definition, entering a building with the intent to commit some other crime, a theft or other felony. And whether or not if the person then does commit that crime, they've then committed both burglary and the other crime. But they've committed the burglary itself merely by entering the building with that intent. And that's what People v. Miller said. In Miller, the person entered an open retail store with the intent to commit a theft and then did commit the theft. And he was convicted of both burglary for the entry and of retail theft for the theft act. And this Court held that there was no one act, one crime problem there with convicting the person of both of those offenses because each one was enacted by the General Assembly to address a distinct harm. So the retail theft statute addresses the harms caused by the stealing itself. And so that's why, of course, the statute takes into consideration the value of the goods stolen and other proportionality factors like that. The burglary statute, on the other hand, addresses the harm caused by the prohibited entry. And so as the Second District recognized in People v. Moore, you, of course, have increased culpability when a person enters with that prohibited intent. So you have a premeditation aspect that you don't in the Bradford scenario where it's more of a spur-of-the-moment crime after an innocent entry. And you also have in the burglary sense, you have the inherent potential that there will be a confrontation between the person who's entered with that prohibited intent and a store employee, or in this case we actually had a customer who was sort of, her suspicions were aroused by the defendant's activities. And so when the person has entered knowing that they have this intent to steal, so they're not there to shop, they're there to steal, that person is likely to be on guard for any type of real or perceived suspicion that they might encounter from others. And there's the possibility then that when confronted or when they think they might be confronted, they'll act in a way that could cause alarm or chaos in the store. They might be prepared to use violence, to either commit the offense or to escape. And so that's traditionally what burglary recognizes as the harm that is distinct from the subsequent theft or felony that the person might commit upon entering. If you're correct in your interpretation of the burglary statute, why did the legislature adopt the retail theft statute, where in so many cases as you've described, the state could be charged in burglary in almost every single retail case, retail theft case? Well, I don't think that's true. That was certainly true in Bradford. And that's what the court recognized there, is that if you were to apply the limited authority doctrine to unauthorized remaining burglary, so that anybody who was in a store, whether or not they'd entered with the intent to steal or not, and then committed a theft would automatically be guilty of unauthorized remaining burglary, because obviously at some point while they were in the store, they formed that intent. That's not the case for unauthorized entry burglary. And so it's not true that all or even a substantial majority of retail thefts will be prosecutable as unauthorized entry burglary. And this is what the second district recognized in Moore. And the reasoning there is that the unauthorized entry burglary requires that additional element of intent upon entry, which is it's going to be a difficult thing for the state to prove that a person had that intent. You need, and I think it was the third district that recognized this in People v. Smith, the state will need independent evidence of that intent. So the theft itself will not suffice. And so as the second district said in Moore, in the vast majority of cases we would expect that only retail theft would be able to be charged. It's only in the cases, and I'd submit that this is one of them, where the people do have that independent evidence, circumstantial no doubt, but still strong evidence demonstrating that the person entered with that intent and did not simply enter innocently and then on a spur of the moment sort of crime of opportunity commit a retail theft. So we don't have the problem here, which the court was concerned with in Bradford, that applying the limited authority doctrine will effectively negate the retail theft statute. And on a related point, I don't think the retail theft statute can do the work that the defendant is asking it to do, because by the same token, the general theft statute that existed at the time of Weaver would do the same thing. So you might say, well, if the General Assembly, by passing the retail theft statute, intended to exempt the entry of a retail store with the intent to commit a theft from the burglary statute, then by the same token, the mere the fact that the General Assembly enacted a general theft statute would suggest that they didn't intend for the entry into a laundromat, an open laundromat, with the intent to commit a conventional theft, to satisfy the burglary statute. But that's exactly what the court held in Weaver. So, again, I think this shows that the underlying premises of the defendant's argument can't simply be limited to the retail store exception that he seeks, but instead would require the court to overrule Weaver and abandon the limited authority doctrine entirely, which he's insisted that he's not asking the court to do. And, in fact, he, you know, we made a number of arguments in our brief for why the heightened stare decisis considerations that would be applicable to Weaver would counsel against overruling it. And the defendant simply didn't respond to any of those arguments. So I think this would be a particularly bad case for the court to take up the issue of revisiting Weaver. I think instead the court should accept Weaver as the law. Of course, as I say, the General Assembly has been free for the past 50 years to amend the burglary statute if it thought that the court had made a mistake in Weaver, and it hasn't done so. And so I think the court here should accept Weaver as given, as the settled law of the state. And the only issue is whether or not that – whether or not a different rule should apply to a retail store. So as opposed to laundromats or restaurants or any other type of open business, that Weaver clearly says the limited authority doctrine applies to. If there are no further questions, I guess I will save any further points for my rebuttal. And I would ask the court to reverse the appellate court's judgment and reinstate the defendant's burglary conviction and remand to that court to consider the other issues that he raised on appeal that the lower court did not consider. Thank you. Thank you, Mr. Levin. Mr. Lenz. Good morning, Your Honors. Good morning, Counsel. My name is Gilbert Lenz from the Office of the State Appellate Defender, and I'm here on behalf of Darren Johnson. Your Honors, three years ago this court came to the straightforward conclusion in Bradford that a run-of-the-mill shoplifting case cannot be charged as burglary, unlawful remaining burglary, where the defendant's conduct was limited to the elements of the retail theft statute. This court, by necessity, left open the question of whether that same reasoning applies to the other form of burglary, unlawful entry burglary, and the only reason we're reading of Bradford is that it does. This court found that logic would be strained by, in light of the retail theft statute, by assuming the legislature intended shoplifting to be charged as unlawful remaining burglary, and logic would be equally strained by saying that unlawful entry burglary applies to shoplifting. Bradford's, the central holding of Bradford, applies seamlessly to this case. The state offers no reason, no reasonable basis for charging unlawful entry, shoplifters with unlawful entry burglary, and for those reasons this court should affirm the appellate court's judgment. Like the Bradford defendant, Mr. Johnson entered an open retail establishment, never entered an unauthorized area of the store, and left while the store was open. Also in Bradford, not only was Mr. Johnson charged with retail theft, but he was charged with burglary. The state charged the $76 run-of-the-mill shoplifting case as unlawful entry burglary. After Bradford, that conviction can no longer stand. This is primarily because seven years after Weaver, as this court recognized in Bradford, the legislature created the offense of retail theft, a multi-layered, nuanced statute, which governs the conduct at issue here, shoplifting. And the reason that Bradford applies seamlessly here is because this court's central holding in Bradford focused on, not on the specific elements of unlawful remaining burglary, but on the physical authority of a person to be inside a retail establishment. This court's holding that where a defendant enters a store during regular hours, never entered areas of the store that were off-limits, and left while the store was open, bars a prosecution for unlawful remaining burglary. That same holding applies equally to unlawful entry. There's simply no room after Bradford to apply Weaver's constructive withdrawal of authority to shoplifting cases. There's two things I would point to. Mr. Lentz? Yes. The burglary statute provides that this offense shall not include the offenses set out in Section 4-102 of the and 4-102 sets forth various misdemeanor offenses for damaging, tampering with, or working on a vehicle without authority. I know this doesn't involve the vehicle code, but doesn't this show that the legislature is capable of making an exception or abrogating the Weaver rule if it wanted to? Certainly the legislature is capable of including an exception within the statute, but that's not the only means by which the legislature can create an exception. In fact, when the legislature creates, that brings up this court's decision in Christie where the legislature created a new offense, a new very specific offense called aggravated kidnapping. And before Christie, the state was prosecuting conduct that constituted aggravated kidnapping as armed violence, I believe. And that specific conduct after the aggravated kidnapping statute was no longer prosecutable under Christie. Under the more general offense of armed violence, it was specific to aggravated kidnapping. And by enacting the retail theft statute, that's exactly after Weaver, that's exactly what the legislature did here. It said when, as this court recognized in Bradford, that was the legislative intent to Doesn't it support, though, Mr. Levin's argument that after Weaver they did nothing and they show all the time they know how to create an exception and they could have written in an exception to the Weaver rule in this circumstance? I would say two things to that, Your Honor. First, the legislature didn't do nothing. They enacted the retail theft statute seven years after Weaver, and that was a very clear expression of legislative intent to govern the specific conduct of shoplifting. And again, the other point is that the legislature can act in one area by amending or creating a different statute. That's also reminiscent of the Blair, the more recent Blair case in 2013, where this court found a constitutional problem with the armed robbery statute in conjunction with the armed violence statute. And the constitutional problem was with the armed robbery statute, but the legislature fixed that problem by amending the other statute. So legislature can act to solve problems or create exceptions working under different statutes. And again, under Bradford, there's no question that the legislature intended, but this court's holding in Bradford made it clear that legislative intent with the retail theft statute was to govern this very specific conduct and punish it in a very specific way according to the value of the merchandise, defendant's history, and other factors. I would say two other things about, from the retail theft statute, show that the legislature specifically contemplated prior intent or intent to steal before entry, and one of it is the subsection that punishes specifically possession of theft devices that assist a person in committing shoplifting, laminated bags and things like that, booster bags I think they're called. Mere possession of a booster bag is retail theft, and in the vast, vast majority of these cases the person will have such a device before they enter the store. So the legislature plainly intended or plainly contemplated the notion that retail theft will encompass people who have the intent to steal before they enter the store. Are you arguing categorically since the enactment of the retail theft statute that no shoplifting retail theft would be covered under the burglary statute, either unlawful entry or remaining? Yes, that's the argument, and it's important to be careful here, which when the conduct is specifically limited to shoplifting, that is entering an open retail establishment, not after hours, never entering an unauthorized area of the store, no employees only area, no cash register, no locked coin machines, as in Weaver, and leaving while the store is open, that is not remaining. So that specific conduct, if the person steals merchandise that's for sale, is governed by the retail theft statute. The person may still be guilty of burglary, someone who, in a retail establishment, if there is some other conduct involved, if the state can show that the person intended to enter, an unauthorized area, then that person could still be guilty of burglary. The Miller case is instructive here as well. In Miller, of course, this court was not presented with this question. It was only a one act, one crime question. The statutes don't have identical elements, so this court said that someone could be convicted of retail theft and burglary. But the Miller defendant offers a good example of how a defendant may be guilty of other crimes beyond the retail theft because he had a knife on him. I believe the fact of that case where he pulled a knife in order to try to escape, depending on the size of that knife, he could have been guilty of any of the offenses under armed violence, which is a class two, class X felony. So the state has other options when there's other conduct involved, when there's actual entry to an unauthorized area, when there's a weapon, when there's intent to enter an unauthorized area if they have the evidence to prove it. But the retail theft statute and the reasoning of Bradford show that where the conduct is specifically limited to the elements of retail theft, that's the statute that governs. And I would just conclude by pointing to another facet of the Bradford reasoning that applies here, and that is Bradford's discussion of absurdity. The state does not deny that someone in our hypothetical, an 18-year-old with no priors, who's standing outside a convenience store looking at a candy bar through a window, if he tells his buddy, I'm going to go steal that candy bar, the state does not deny that that person is guilty of a class two felony when he walks through the door of the convenience store. And that's true even if he doesn't steal the candy bar, and that's true even if he pays for it. The state does not deny that that's possible under its reasoning here. Now, admittedly, that's an absurd hypothetical, but it's a logical result of this reading of the statutes that allows, that groups all the defendants together, people who commit. The state's, the legislature used a scalpel when it created the retail theft statute to look at the specific conduct involved, shoplifting. The state and the appellate courts, since the retail theft affirming burglary convictions, want to use a sledgehammer and they want to group all these defendants in the same class two felon category, all the way from the Miller defendant to Mr. Johnson to the kid outside the convenience store who doesn't even steal the candy bar, but just intends to. The state's reasoning is that those are all class two felons, and that should not be the law after the retail theft statute and this court's holding in Bradford. When you were talking about remaining within, and I'm not sure you were talking about Bradford, but is it your position that if a person secretes himself in a place where he's not entitled to be, that remaining within is subject to the burglary statute? I believe that would be. If the state had evidence that the person entered an unauthorized area, secreted himself away, I think that would absolutely fall. And I think that was one of the types of unlawful remaining burglary that the Bradford court specified. So is it your argument that the without authority pertains to what the proprietor gives authority to people to do, that is to come into the store, into public areas, as opposed to unauthorized areas? Yes, yes. Yeah, absolutely. Where a defendant, in the language of Bradford, where a defendant enters an open store, never enters an unauthorized area, and leaves while the store is open, that conduct, assuming he also shoplifts merchandise, that conduct is governed by the retail theft statute. But it is hard to argue against the idea that a proprietor would not give authority to a person to enter with the intent to commit a felony or theft in the store. That's true. If the proprietor was aware of the person's intent to steal, I believe they would be within their rights to bar the person. And, of course, if the person remains, enters or remains after being barred from the store, that could still be burglary. But the physical authority, Bradford's holding focuses on physical authority, open retail establishment. A person has physical authority to be inside an open retail establishment essentially until he doesn't, until he's barred or until he commits a crime inside. And that's Bradford's key holding, and there's no logical or legal basis for saying that that holding applies only to unlawful remaining burglary and not to unlawful entry burglary. Would we have to overrule Weaver to get to where you want us to go? Absolutely not, absolutely not. That's because, and that's because the retail theft statute happened after, was enacted after Weaver. So the legislature in the retail theft statute manifested its intent that this specific form of conduct would be governed and punished under that statute. But Weaver may or may not, and that will be a different case before this court, but the Weaver doctrine, limited authority doctrine, may apply to other establishments. But an open retail mercantile establishment, if the defendant's conduct does not go beyond shoplifting, is governed by the retail theft statute. Following up on Chief Justice Carmeier's question, if we do overrule Weaver, does that, would our decision affect home invasion and residential burglary statutes in any way? I don't believe so. I don't believe so. If this court were to overrule Weaver, I believe that would only apply to beyond retail establishments. That would mean that you'd be talking about public buildings that are open to the public, non-retail establishments. Like the laundromat in Weaver, for example. Overruling Weaver would not say that the Weaver defendant didn't commit burglary. It would just mean that the burglary happened when he broke into the change machine. It wasn't walking through the door of the open laundromat. I think, in fact, if the limited authority doctrine no longer applied to open buildings, buildings that are open to the public, the Weaver defendant might still be guilty of unlawful remaining burglary because he entered an open establishment. That itself isn't burglary, but then he remained within that establishment to break into a locked change machine. Assuming that was a felony, or that would be a theft, so that could definitely qualify as unlawful remaining burglary under, I think, what would be a better rule. So for all those reasons, Your Honor, Bradford applies seamlessly to unlawful entry burglary. There's no logical or legal reason to make such a huge disparity based on when the intent to steal was formed. And for those reasons, this Court should affirm the appellate court's judgment reversing Darren Johnson's burglary conviction. Are there no further questions? Seeing none, thank you, Mr. Lentz. Reply. Thank you, Your Honor. I have just a few brief points I'd like to make. The first point is the defendant can still insist that he's not asking the court to overrule Weaver, but if I understand correctly, he's now asking the court to completely rewrite it. Weaver did not depend on the notion that the defendant there committed burglary by entering a vending machine. A burglary is entering a building or certain other structures such as cars and boats and such, but not vending machines. I'm not aware of any precedent that a person who enters a vending machine without authority is guilty of burglary. Weaver was clear that the defendant there was guilty of burglary because he entered the laundromat without authority. And he entered the laundromat without authority because he entered with the intent to commit a theft. And nothing in Weaver depended on the nature of the theft that he intended to commit or the manner in which he intended to commit it. It was the mere fact that he had the intent to commit a theft rather than do his laundry that negated his intent to be in the building. I would like to address your question, Justice Burke, about the effects of overruling Weaver. And this is why I think this is a particularly bad case to do it since the issue has not been briefed by both sides. But I do think there is the real concern that overruling Weaver would call into question the limited authority doctrines application to other statutes such as the home invasion statute or the residential burglary statute. And in particular, in People v. Bush, we cite that case in our brief where this court held that the limited authority doctrine applies to the home invasion statute. The court cited with approval an appellate court decision which had reached the similar result on the ground that the without authority language in similar statutes should be interpreted similarly. And so you have essentially that same language in all three of these statutes, the burglary statute, the home invasion statute, and the residential burglary statute. And so there's a real concern that if you eliminate the limited authority doctrine from one of those statutes, it might affect the other ones. And so I think that's something the court should be concerned about if it's thinking about overruling Weaver. Let me ask you a question. Counsel raised an interesting issue. We know that in the Weaver case, the defendant was also convicted of possession of burglary tools. Correct. He had on his person keys to not just this vending machine but apparently a number of them and had a great deal of money and coins in his pocket. Counsel argues that the retail theft statute includes language about the possession of the booster bags or whatever we're going to call it and the retail theft tools kind of idea. Yes. The legislature included entry with those kind of tools to still be retail theft, right? I'd like to actually push back on that a little bit because that provision of the retail theft statute does not require entry. The person is guilty of retail theft under that provision merely by possessing one of those bags. So the possession of the bag, I think the statute's exact language is use or possession of a theft detection shielding device with the intent to commit retail theft. My reading of that provision would make somebody guilty of that provision of the retail theft statute merely by being found in possession of one of those bags in the parking lot. And more importantly, there's no element. So it might be true that usually the person will be caught with one of those bags in the store, but the State will not have to prove the element of intent and certainly not the element of intent or entry. Excuse me, let me back up there. The State will not have to prove the element of entry, let alone entry with intent to commit a theft, to convict somebody of that provision of the retail theft statute. Because it says possession or use. But if it was being charged under use, how would you interpret that? Well, would it be the entry into the retail store with one of these bags? And the legislature would create that as a retail theft violation. Well, I don't think that's what the legislature did there because even still, even in the case where somebody's being charged with using one of the bags, and now of course they might be in the store and using it, but the people still would not have to prove that they entered the store with the intent to use the bag to commit retail theft. And so it might not be a likely scenario that a person is just carrying around one of those bags. But what matters are the elements of the effect. And this gets back to People v. Miller, where the Court recognized that where two statutes, and People v. Christie noted this as well, where two statutes, where each statute has an element that the other doesn't, the General Assembly presumably enacted both with the intention that a person who commits both offenses in the same course of conduct can be found guilty of both offenses. And that's because each offense is designed to target a distinct harm. And the legislature, as the Court said in Miller, intended to ensure that defendants are held accountable for the full measure of the harm they cause. And so Miller's a good example of this. And so in Miller, the defendant was convicted of burglary, retail theft, and I believe some form of assault because he had the knife and he threatened the person on the way out. Now, these were all actions that occurred in the same course of conduct, but there's no suggestion there that the legislature didn't intend for the person to be found guilty of each of those offenses if the person committed each of those offenses. And that's because each offense created a distinct harm. The entry with the intent to commit a theft committed the harms generally associated with burglary, which is the inherent potential for a confrontation. The act of stealing created the harm generally associated with retail theft, which is the value of the goods stolen. And the pulling of the knife on the security guard obviously brought about its own distinct harms. And so the person was convicted of all of those offenses because they committed all of those offenses. Certainly the state would attempt to introduce and rely on the use of the booster bags as evidence of intent for purposes of a burglary. True. That would definitely, in an appropriate case, that would be evidence of the person's intent. But it wouldn't be an element of the retail theft offense. It would still be, it would be evidence to be used in establishing the element of the burglary offense. And so this gets back to the point in Bradford where the court said it would strain logic to extend the limited authority doctrine to unauthorized remaining burglary, because doing so there would turn every retail theft into unauthorized remaining burglary. But that's simply not the case here. At most we have a small subset of retail thefts that will be also unauthorized entry burglary. And it's only that subset of offenses where the state can prove beyond a reasonable doubt that the person entered with that intent and didn't simply enter innocently, as in Bradford, and then commit a spur-of-the-moment retail theft. Mr. Levin? Yes. Excuse me. The use of the backpack or backpacks on top of the vending machine? Yes. That was at the source exit? Yes. In the vestibule area. I wasn't clear if these backpacks were ones that they brought and put on the vending machine or if they were somehow displayed on top of the vending machine. No. I believe these are backpacks they brought with them. So how does that occur? Well, we think that this is a case with strong circumstantial evidence that the defendant did enter the store with the intent to commit a theft. Now, of course, he did raise in the appellate court a separate argument contesting the sufficiency of the evidence on that point. And we agree that if the court were to rule in our favor here on the legal question, it should remand to the appellate court to consider that separate sufficiency claim in the first instance. We do think we did have the evidence to establish that beyond a reasonable doubt. But the defendant, of course, is entitled to appellate review on that question. The final point I would make is I'd like to respond to Justice Thomas' point, which I think was an important one. And you mentioned a particular example where the General Assembly did carve an exception into the burglary statute. And I think that does show that the General Assembly is perfectly capable of amending the burglary statute to withdraw certain actions from its scope. Here it has not done so. The argument that enacting the retail theft statute implicitly indicated an intent to narrow the scope of the burglary statute gets the standard backwards, as the Court noted in People v. Jones, which is cited in our brief. The general presumption is that when the legislature passes a new statute, it does so with knowledge of the existing law and with knowledge of this Court's decisions construing the existing law. And a new statute won't be held to overturn that settled law unless the implication that the intent was there is clear. And so at most what we have here, if I'm understanding the defendant's argument correctly, is an implication that the General Assembly intended to narrow the scope of the burglary statute by enacting the retail theft statute. But that's simply not enough. We need to see some sort of clear indication of that intent. And I think what would have been much more likely, if the General Assembly had intended to limit the burglary statute, would have been for that same General Assembly, when enacting the retail theft statute, to also add in an exception to the burglary statute, to narrow it in a way similar to the way it did with the motor vehicle exceptions. Mr. Levin, I see your time has expired, but I do have one question. In talking about the intent to steal or to shoplift before coming into the store, as a matter of proof, and you think you have it in this case, nothing would prevent the State from charging burglary in every case of retail theft, would it? It's just a question of whether they could prove that the intent was farmed before they entered the store. Well, obviously the State is constrained in what they can charge by what they have a good faith basis to believe the evidence will establish. And so I don't think the State would simply charge all retail thefts as unauthorized entry burglary, regardless of their view of the evidence concerning the entry element and the intent element. But in a case like this, where the people have strong evidence establishing the unauthorized or the prohibited intent supporting the unauthorized entry charge, in those cases the charge will be appropriate. And as the Second District recognized, in the vast majority of cases, the people likely won't be able to prove that element, because it is a difficult burden to establish that intent. But we do think we have it here. Thank you. Thank you, Your Honor. Case number 123318, People v. Johnson, will be taken under advisement as agenda number one. Mr. Levin, Mr. Lenz, we thank you for your arguments this morning, and you are excused.